# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

BRIAN M. ZAMITO,

                                            Plaintiff,

          -vs-                                          DECISION and ORDER
                                                        07-CV-6241-CJS
PATRICK PONTIAC, INC., NATIONAL AUTO
CARE CORPORATION and CANANDAIGUA
NATIONAL BANK & TRUST COMPANY, N.A.,[1]

                                            Defendant.

## APPEARANCES

For Plaintiff:                    Richard G. Vogt, Esq.
                                  Richard G. Vogt, P.C.
                                  228 Plymouth Avenue South
                                  Rochester, NY 14608
                                  (585) 232-7660

For Defendant Patrick Pontiac:    Jennifer E. Mathews, Esq.
                                  Peter J. Cambs, Esq.
                                  The Cambs Law Firm LLP
                                  5701 West Genesee Street
                                  Camilus, NY 13031
                                  (315) 484-1200

For Defendant National Auto:      Mark Andrew Molloy, Esq.
                                  Nixon Peabody LLP
                                  40 Fountain Plaza
                                  Suite 500
                                  Buffalo, NY 14202
                                  (716) 853-8100

---

[1]The bank was discontinued as a party by stipulation docketed on June 26, 2007. (Docket No. 4.)

## INTRODUCTION

**Siragusa, J.** This matter is before the Court on motions for summary judgment filed by Defendants Patrick Pontiac, Inc., and National Auto Care Corporation, seeking dismissal of the Truth in Lending Act ("TILA") and New York State General Business Law Section 349 ("Section 349") claims against them. For the reasons stated below, the Court grants Defendants' motions (Docket Nos. 19 & 21) for summary judgment and awards costs, but not attorney's fees.

## BACKGROUND

Plaintiff, Brian M. Zamito, purchased a used 2000 Pontiac Grand Prix SE from Patrick Pontiac, Inc. ("Patrick Pontiac") on October 13, 2003. At the same time, Zamito purchased an extended warranty service contract from National Auto Care Corporation ("National Auto"). Further, on October 13, 2003, in connection with his acquisition of the Grand Prix, Zamito signed a retail sales installment contract, a Truth in Lending disclosure statement, and a purchase agreement. Zamito financed his purchase of the vehicle and extended warranty contract through Canandaigua National Bank & Trust Company, N.A. A portion of the amount charged for the extended warranty contract was retained by Patrick Pontiac. The retail installment contract Zamito signed contained an itemization of the amount financed with an indication, in box number seven, that National Auto would be paid $1,657.00. An asterisk next to that entry refers to a footnote underneath the box and that footnote states, "You may be retaining a portion of these amounts." At the top of the retail installment contract, the term "you" is defined to mean "the Seller or, after the Seller transfers its rights under this Contract, anyone having those rights."

Shortly after October 13, 2003, Zamito received the extended warranty contract in the mail. Pursuant to its terms, Zamito had 20 days to review the contract and cancel it for a full refund if he chose to do so. The contract contained a "Minimum Services Required" provision for pre-owned or used vehicles and requires, *inter alia*, that the owner "change transmission fluid every 12 months or 12,000 miles on used vehicles."

Zamito had his vehicle repaired at Patrick Pontiac under the terms of the contract on several occasions during the following three years. On January 19, 2006, Zamito brought his car to Patrick Pontiac for service because he was experiencing noise and a shudder in the car's transmission. A service representative at Patrick Pontiac contacted National Auto to obtain authorization for a repair and was told the repair would not be covered under the extended warranty, since there was no proof that Zamito had changed the transmission fluid in the car every 12 months or 12,000 miles. The service representative relayed this information to Zamito. Zamito responded by taking his vehicle elsewhere for repairs. Specifically, he had it fixed at Empire Transmission and Auto Service, Inc., at a cost of $1,795.06.

On January 18, 2007, Zamito commenced a lawsuit against Defendants in New York State Supreme Court, Monroe County. Subsequently, Defendant National Auto removed the action to this Court.

Zamito's complaint alleges four causes of action: (1) a first cause of action against Defendants Patrick Pontiac and National Auto, in which Zamito alleges that Defendants issued a disclosure statement that violated the requirements of the TILA

and regulations promulgated thereunder, specifically 15 U.S.C. § 1638(E)[2] and regulation[3] 226.17(E); (2) a second cause of action against Defendants Patrick Pontiac and National Auto, in which Zamito alleges that Defendants violated section 349 of the General Business Law of the state of New York by charging automobile buyers more than they expended or intended to expend on behalf of Zamito and by such deceptive acts defrauded him; (3) a third cause of action against Canandaigua Bank, in which Zamito alleges that this defendant, as a holder of the installment contract and extended warranty contract, entered into by Zamito, is liable to the same extent as Defendant Patrick Pontiac for violating the provisions of the Truth in Lending Act and section 349 of the New York state General business Law;[4] and finally, (4) a fourth cause of action against Defendants Patrick Pontiac and National Auto, in which Zamito alleges that the contract requirement, that the transmission fluid be changed every 12 months or 12,000 miles, is unconscionable, is a deceptive practice, and is an unreasonable trap, demonstrating in bad faith on the part of National Auto and its agent Patrick Pontiac, all in violation of section 349 of the New York state General business Law. Plaintiff seeks class-action certification pursuant to Federal Rule of Civil Procedure 23.

---

[2] Section 1638 does not have a subdivision (E), but does have a subdivision (a)(2)(B)(iii) that requires disclosure, upon a customer's written request, of, *inter alia*, "each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person…." 15 U.S.C. § 1338(a)(2)(B)(iii) (2005).

[3] The Court's research has found 12 C.F.R. § 226.17(e), which reads as follows: "(e) Effect of subsequent events. If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of this regulation, although new disclosures may be required under paragraph (f) of this section, § 226.19, or § 226.20."

[4] Since Canandaigua Bank is no longer a party to the case, the third cause of action is of no effect.

## STANDARDS OF LAW

### Summary Judgment

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). Where the non-moving party will bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477

U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

### Federal Truth in Lending Act

The Truth in Lending Act is codified at 15 U.S.C. § 1601, *et seq.*, and was enacted as Title I of the Consumer Credit Protection Act, 82 Stat. 146. *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 207 n.1 (1981). The Act requires,

> the lender or creditor to provide "a written itemization of the amount financed," including "each amount that is or will be paid to third persons by the creditor [the dealer here] on the consumer's behalf, together with an identification of or reference to the third person." 15 U.S.C. § 1638(a)(2)(B)(iii).… It is true that the consumer is not entitled to the state-ment unless he makes a written request for it, § 1638(a)(2)(B); 12 C.F.R. § 226.18(c)(2), and there is no indication that [the plaintiff] did. But the creditor is allowed to skip this stage and simply provide the itemization of the amount financed without being asked for it. 12 C.F.R. Pt. 226, Supp. I § 18(c)(1).

*Gibson v. Bob Watson Chevrolet-Geo, Inc.,* 112 F.3d 283, 284 -85 (7th Cir. 1997).

**New York General Business Law Section 349**

Section 349(a) provides that, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." Subdivision (h) provides a right of a private cause of action and authorizes an award of "actual damages or fifty dollars, whichever is greater...." In addition, subdivision (h) provides that "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff." N.Y. Gen. Bus. L. § 349(h) (1984).

## ANALYSIS

**Patrick Pontiac's Motion for Summary Judgment**

In support of its claim for summary judgment, Patrick Pontiac maintains that Zamito's claims were brought past the applicable statutes of limitation. Moreover, with respect to the New York General Business Law Section 349 claim, Patrick Pontiac contends it is without merit.

In an attorney affirmation[5] filed in opposition to Patrick Pontiac's motion, Zamito does not dispute that the subject action was begun more than three years after he signed the retail sales installment contract, the Truth in Lending disclosure, the purchase agreement, and the extended warranty contract. Rather, Zamito argues, as to the TILA, that the one-year statute of limitations did not begin to run until he became aware the alleged violation. (Vogt. Aff. ¶ 18.) He contends that the retail installment contract and Truth in Lending Disclosure Statement (Exhibits I and J, respectively), show "no facial violation of TILA, since these documents indicate that the total amount of the money financed and paid to the defendant Patrick for the extended warranty service contract of the defendant NAC was paid to NAC." (Vogt Aff. ¶ 19.) Accordingly, he maintains that Patrick Pontiac fraudulently concealed that it was retaining a portion of the proceeds from its sale of the National Auto warranty. Thus, although Patrick Pontiac raises the statue of limitations in seeking dismissal of the TILA claim, the Court must look to the merits, since Zamito counters that equitable tolling applies. On this point, he argues that the cause of action did not accrue until he discovered the alleged fraud, which discovery he contends occurred well within the limitations period.

Zamito has submitted a treatise as Exhibit O to his papers, which discusses the principle of equitable tolling in a TILA case and states: "In a TIL case, the consumer

---

[5]Western District of New York Local Rule of Civil Procedure 7.1(e) provides that, "[a]bsent leave of Court or as otherwise specified in this rule, upon any motion filed pursuant to Federal Rules of Civil Procedure 12, 56 or 65(a), the moving party shall file and serve with the motion papers a memorandum of law and an affidavit in support of the motion and the opposing party shall file and serve with the papers in opposition to the motion an answering memorandum and a supporting affidavit. Failure to comply with this subdivision may constitute grounds for resolving the motion against the non-complying party." The Court is unable to locate any opposing memorandum of law from Zamito's counsel.

must show that the creditor has fraudulently concealed a material fact and that despite due diligence the consumer could not have reasonably discovered the concealed fact." Truth In Lending, National Consumer Law Center, 6th Ed., Chapter 7, Creditor Defenses and Counterclaims, §§ 7.2.3.1, Fraudulent Concealment Tolls the Limitations Period (citing *Moor v. Travelers Ins. Co.*, 784 F.2d 632 (5th Cir. 1986) and other cases). In assessing a claim of fraudulent concealment in a mortgage case, the Southern District of New York wrote:

> The *sine qua non* of fraudulent concealment is that the defendant fraudulently concealed from the plaintiff his cause of action during the time in which plaintiff could have brought that action. Absent such allegations, equitable tolling does not apply. *See In re Woolaghan*, 140 B.R. 377, 382 (W.D. Pa. 1992); *Hubbard v. Fidelity Federal Bank*, 824 F. Supp. 909 (C.D. Cal. 1992), *aff'd in part and rev'd in part*, 91 F.3d 75 (9th Cir. 1994).
>
> In cases involving TILA, "the courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations." *Pettola v. Nissan Motor Accept. Corp.*, 44 F. Supp. 2d 442, 450 (D. Conn. 1999) (citing *Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177 (D. Minn. 1999)); *Jones v. Saxon Mortg.*, 980 F. Supp. 842, 846 (E.D. Va. 1997); *Kicken v. Valentine Prod. Credit Ass'n*, 628 F. Supp. 1008, 1011 (D. Neb. 1984), *aff'd*, 754 F.2d 378 (8th Cir. 1984) (table decision); *Hughes v. Cardinal Fed. Sav. & Loan Ass'n*, 566 F. Supp. 834, 838 (S.D. Ohio 1983)). The holdings make good sense because if the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified. *See Hughes*, 566 F. Supp. at 838 ("otherwise the one-year statute of limitations would be tolled in almost every TILA action in which a non-disclosure violation was found and the statutory limitations provision would be a nullity").

*Cardiello v. Money Store, Inc.*, No. 00 Civ. 7332 (NRB), 2001 WL 604007, *5, 2001 U.S. Dist. LEXIS 7107, *15-*16 (S.D.N.Y. May 31, 2001), *aff'd* No. 01-7774, 29 Fed. Appx. 780 (2d Cir. Mar. 15, 2002), *cert. den.* 537 U.S. 1046 (2002); *accord McAnaney v. Astoria Financial Corp.*, No. 04-CV-1101 (JFB) (WDW), 2007 U.S. Dist. LEXIS 67552,

*28 (E.D.N.Y. Sep. 12, 2007) ("absent some affirmative deception by defendants, the mere nondisclosure of fees later charged to plaintiffs does not, by itself, justify equitable tolling of the TILA limitations period.").

While Zamito essentially contends that he had no indication that Patrick Pontiac would be retaining any portion of the $1,657.00 paid to National Auto to purchase the extended warranty, the Court finds such contention at odds with the evidentiary proof. In fact, on the Retail Installment Contract, which Zamito signed, the National Auto fee of $1,657.00 is listed and includes an asterisk. The asterisk refers to the following language: "You may be retaining a portion of these amounts." (Retail Installment Contract (Oct. 13, 2003) at 1.) Furthermore, the Retain Installment Contract lists Patrick Pontiac, Inc. as the seller and explicitly defines "you" to mean the seller. Therefore, the Court finds that Zamito was on notice that Patrick Pontiac may be retaining part of the $1,657.00 being paid to National Auto for the extended warranty. Moreover, while Patrick Pontiac's Truth in Lending Disclosure Statement shows only the amount financed, the annual percentage rate, finance charge and total sale price, under a line item entitled "Itemization," it states, "You have a right at this time to an Itemization of the Amount Financed." However, on the form which Zamito signed, above his signature, two Xs appear in the box indicating "We do not want an itemization." (Patrick Pontiac GMC Jeep Truth in Lending Disclosure Statement (Oct. 13, 2003) at 1.)

In *Gibson v. Bob Watson Chevrolet-Geo Inc.*, 112 F.3d 283, 285 (7th Cir. 1997), a case analogous to the one at bar, Judge Posner wrote:

> The defendants argue that the Federal Reserve Board, the oracle of the Truth in Lending Act, 15 U.S.C. § 1604(a); *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219, 101 S.Ct. 2266, 2273-74, 68 L.Ed.2d 783

> (1981); Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565-69, 100 S.Ct. 790, 796-99, 63 L.Ed.2d 22 (1980); McGee v. Kerr-Hickman Chrysler Plymouth, Inc., 93 F.3d 380, 383 (7th Cir.1996); Cowen v. Bank United of Texas, FSB, supra, 70 F.3d at 943, has issued an Official Staff Commentary that authorizes the dealers to do what they did here. The commentary (a part of the Federal Reserve Board's Regulation Z) addresses the situation in which the creditor retains a portion of the fee charged to a customer for a service provided by a third party, such as an extended warranty. It provides that "the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category 'amount paid to others' language such as '(we may be retaining a portion of this amount).'" 12 C.F.R. Pt. 226, Supp. I § 18(c)(1)(iii)(2).

*Gibson*, 112 F.3d at 285. As Judge Posner further observed, the defendants in *Gibson*

> contend[ed] that the words "may" and "could" show that they can if they want disclose that they are retaining some of the fee but that they are not required to do so.... The only sensible reading of the commentary is as authorizing the dealer to disclose only the fact that he is retaining a portion of the charge, rather than the exact amount of the retention.

*Id*. at 286. Here, the Court concludes, the evidentiary proof establishes that the retail installment contract at issue complied with the TILA because it disclosed the fact that Patrick Pontiac may be retaining some of the fee being paid to National Auto for the extended warranty. Further, the Court concludes that on the Truth in Lending Disclosure Statement, Zamito waived his right to an itemization. In this regard,

> [t]he creditor need not comply with [the itemization requirement in] paragraph (c)(1) of this section if the creditor provides a statement that the consumer has the right to receive a written itemization of the amount financed, together with a space for the consumer to indicate whether it is desired, and the consumer does not request it.

12 C.F.R. § 226.18(c)(2) (1994).

Therefore, as to Zamito's equitable tolling argument, the Court finds that Zamito has not come forward with any evidentiary proof to show that Patrick Pontiac fraudulently concealed a material fact, which Zamito could not have reasonably

discovered with due diligence. On the contrary, the proof shows that Patrick Pontiac complied with the TILA and that Zamito waived his right to an itemization of the amount financed. Accordingly, the Court finds that Patrick Pontiac has shown its entitlement to judgment with regard to the TILA claim.

Turning to Zamito's New York General Business Law Section 349 claim, Patrick Pontiac contends that this claim is also barred by the applicable statute of limitations. Under New York law, the applicable limitations period for the subject General Business Law claim was three years. It is undisputed that Zamito received a complete copy of the extended warranty contract shortly[6] after his October 13, 2003, purchase. Since Zamito did not commence the subject action until January 18, 2007, Patrick Pontiac argues that his General Business Law claim is time barred.

However, similar to his argument under the TILA, Zamito contends he did not become aware of the allegedly unconscionable portion of the warranty contract (the requirement to change the transmission fluid every 12 months or 12,000 miles) until Patrick Pontiac, on January 20, 2006, informed him that National Auto would not pay for to repair his transmission. Although Zamito states in his affidavit that when he received the warranty in the mail shortly after he signed the paperwork for its purchase, he "did not study it in detail, and did not notice under Minimum Services Required, 'Change transmission fluid every 12 mos. or 12,000 miles on used vehicles and check axle fluid,' nor that [he] could cancel the contract within 20 day[s]," (Zamito Aff. ¶ 5), he does not claim that these terms were not contained in the contract. Therefore, his contention, that

---

[6]Zamito contends it was approximately three weeks after his purchase. (Zamito Aff.  5.)

Patrick Pontiac fraudulently concealed a material fact which he could not discover with due diligence, is without merit. The allegedly unconscionable information is readily observable from the contract. As with the TILA claim, Patrick Pontiac has shown its entitlement to judgment on the statute of limitations defense to the New York General Business Law claim.

## National Auto's Motion for Summary Judgment

Like Patrick Pontiac, National Auto contends that Zamito's claims under the TILA and New York Business Law Section 349 are barred by the applicable statutes of limitation. National Auto further maintains that Zamito fails to state a claim under either the TILA or Section 349. The Court, as discussed in detail above, rejects Zamito's equitable tolling argument and determines that both his federal and state claims are time barred.[7]

## Award of Costs

When arguing before Magistrate Judge Payson on Defendants' motion to amend the answer to add a statute of limitations defense, Plaintiff's counsel asserted that if the statute of limitations had been pleaded,

> I might be able to have [sic] addressed it in its early stages by pointing out that actually [sic] researching the law, but finding out whether it was applicable to this particular case when—how it affects the does [sic] the time start for the tolling or the statute to run and any questions of equitable tolling as well. Not to mention, of course, the fact that if there is a statute of limitations defense and it is valid and there is no way to get around it at this point with taking into account these other possibilities of approaching

---

[7]Since the Court is granting National Auto's motion for summary judgment based on the statute of limitations, it need not address National Auto's contention that the complaint fails to assert claims under the TILA and Section 349.

it, that would probably be the end of the action, at this point, barred by the statute of limitations.

(Transcript of Proceedings, Nov. 28, 2007, Docket No. 19-15, at 3-4.) Defendant National Auto contends that this excerpt shows that Plaintiff's counsel, "[d]espite being advised of this legal bar to his claim several months ago, …continued to pursue this cause of action without any legal or factual support." (National Auto Reply Mem. of Law, Docket No. 30, at 10.) Defendant Patrick Pontiac also seeks an award of costs and associated attorney's fees for the motion, relying on the same reasons as National Auto's, and on counsel's unexplained failure to seriously negotiate a settlement when he represented that he wanted only the costs of repairs, and Patrick Pontiac repeatedly offered to settle for a greater amount. (Patrick Pontiac Reply Mem. of Law, Docket No. 29-2, at 11; Matthews Aff., Docket No. 29 ¶¶ 35-40.)

Federal Rule of Civil Procedure 56(g) provides that,

> If satisfied that an affidavit under this rule is submitted in bad faith or solely for delay, the court must order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt.

The Court has found little case law on the application of Rule 56(g), but in one case, *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412 (S.D.N.Y. 1997), the magistrate judge's report and recommendation contains a thorough analysis of the then-existing case law. In general, U.S. Magistrate Judge Grubin, in recommending against an award of attorney's fees, concluded that only in egregious situations, such as submission of a false affidavit, have attorney's fees been awarded. *See, e.g.*, *Bowers v. Rector & Visitors of the Univ. of Va.*, No. 3:06cv00041, 2007 U.S. Dist. LEXIS 75064 (W.D. Va. Oct. 9, 2007) ("an affidavit is presented in 'bad faith' when it knowingly contains perjurious or intentionally

false assertions or knowingly seeks to mislead by omitting facts central to a pending issue." (Citing, *inter alia*, *Jaisan*)). Magistrate Judge Grubin's Report and Recommendation was adopted by the district court. *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412 (S.D.N.Y. 1998). As in *Jaisan*, this Court concludes that Zamito's counsel's actions do not justify an award of attorney's fees under Rule 56(g). Costs, however, will be awarded pursuant to 28 U.S.C. § 1920 (1978).

## CONCLUSION

Both Defendants' motions for summary judgment (Docket Nos. 19 & 21) are granted. The Clerk is directed to enter judgment for Patrick Pontiac, Inc. and National Auto Care Corporation, tax costs to Plaintiff, and close the case.


IT IS SO ORDERED.

Dated:   August 21, 2008
          Rochester, New York

                         ENTER:

                                   /s/ Charles J. Siragusa
                                   CHARLES J. SIRAGUSA
                                   United States District Judge